**Eugene W. PATTERSON, Jr.**

**v.**

**COMMANDING GENERAL, Headquarters, U. S. Army Training Center, Infantry and Fort Polk, Fort Polk, Louisiana.**

**No. 16101.**

United States District Court,
W. D. Louisiana,
Lake Charles Division.

Jan. 11, 1971.

Charles S. King, Lake Charles, La., for petitioner.

Donald E. Walter, U.S. Atty., Paul Lynch, Asst. U. S. Atty., Shreveport, La., for defendant.

EDWIN F. HUNTER, Jr., District Judge.

This action by a commissioned officer in the United States Army, a member of the Medical Corps, seeks a writ of habeas corpus to compel the United States

Army to release him from active duty alleging that the United States Army is in violation of its regulation created for induction of physicians into the United States Army.

The military personnel records of petitioner, Captain Eugene W. Patterson, Jr., pertaining to his induction into the Army, and those records and documents pertinent to this proceeding are attached and reveal:

1. That petitioner submitted an application for an appointment as a commissioned officer in the grade of Captain in the Medical Corps and was appointed a Reserve Commissioned Officer of the United States Army under Title, X, U.S.C. §§ 591 and 593, with a grade of First Lieutenant on 18 June, 1968.

2. A report of medical history, dated 20 January, 1970, consisting of information either prepared by or given by petitioner, outlines his physical health in his own words, as "good, except (sic) back pain due to an old disc injury." And in response to a specific question, contained thereon, stated that he was unable to assume certain positions "due to back condition" and that he had been advised to have an operation for a "herniated disc * * *" and listed that he had recurrent back pains.

3. A report of medical examination, dated 27 January, 1970, bearing the signature of Grundy Cooper, found petitioner medically qualified under Chapter 8, Army Regulation 40–501 with a "3" Physical Profile.

4. Paragraph 9–3 (Subparagraph 3), Chapter 9, AR 40–501, explains numerical designation "3" for physical profiling as follows:

"A profile containing one or more numerical designation '3' signifies that the individual has medical condition(s) or physical defect(s) *which require certain restrictions in assignment within which he is physically capable of performing full military duty.* Such individuals are not acceptable on procurement (entry) standards in time of peace, *but may be acceptable in time of partial or total mobilization.* They meet the retention standards, while in service, but should receive assignment commensurate with their functional capability." (Emphasis added)

5. Department of the Army Letter Order No. A–2–2108, dated February 17, 1970, provides that petitioner was ordered to active duty, assigned to United States Army Hospital, Fort Polk, Louisiana, and instructed to report for duty not later than 20 April, 1970 for a two-year tour of duty in compliance with quota source provided by The Surgeon General.

6. Paragraph 2 of a Special Order, issued by petitioner's Medical Unit at Fort Polk, Louisiana, assigned petitioner to that Unit in the grade of Captain, with duties as a general Medical Officer with an effective reporting date of 21 April, 1970.

7. That a Medical Board in its report, dated June 5, 1970, provides that petitioner was found "medically qualified for duty with permanent limitations, as evidenced by a medical examination and a review of his health records * * *" *and prescribed that petitioner could do no crawling, stooping, running, jumping, prolonged standing or marching and no strenuous physical activity.* This assignment restriction for petitioner was made by a Medical Board consisting of three commissioned officers of the Medical Corps in compliance with a request from the Military Personnel Section responsible for petitioner's records, as determined by a personal examination of petitioner's medical records by the Military Personnel Clerk in charge of Officers' Records.

8. That on 27 January, 1970, prior to petitioner's entry on active duty and in accordance with a special call for physicians, an evaluation of his medical examination was made for the Army Surgeon and he was found medically qualified in accordance with Chapter 8, AR 40–501.

9. That petitioner, on 10 August, 1970, submitted an application requesting release from the U.S. Army for fail-

ure to meet medical criteria and to this application petitioner attached statements of Doctors P. M. DeCharles, Ray E. King, and Grundy Cooper, as well as a copy of his DA Form 3349, referred to in paragraph 3, above, and which are the same documents submitted with petitioner's application for a writ of habeas corpus to this Court.

10. On 10 August, 1970, Captain Patterson submitted his request for release from the Army, pegged on the contention that at the time he was inducted his condition did not meet the medical criteria for entry on active duty. This request was forwarded through various military channels and was formally acted upon by the designated representative of the Secretary of the Army on 2 November, 1970. The Secretary of the Army ruled that Captain Patterson was medically qualified as a physician at the time of his commission and upon his entrance on active duty.

### THE HABEAS HEARING

An evidentiary hearing was held in this Court. Various delays have been granted to permit counsel to file briefs, etc. The evidence introduced revealed that Captain Patterson did in fact have a herniated neculeus pulposus at the time of his entry on active duty. The primary basis of petitioner's application for habeas is that the Army violated its own procedures and standards when it inducted him into the Army with this disc condition. However, Colonel J. W. Blount, Chief of the Professional Service Division of the Fourth Army, stated that a finding of an intervertebral disc syndrome and definitive objective abnormal findings on physical examination would not be sufficient to disqualify petitioner from entry on active duty, as outlined in Paragraph 8–22 AR 40–501. The Colonel explained that Paragraph 8–3 of Army Regulations 40–501 contained the Department of Defense policy specifying that physicians are to be considered potentially acceptable for military service provided they can reasonably be expected to be productive in the

armed forces. He testified that his examination of the medical forms indicated to him that petitioner had a static impairment, and as a result, even though he had the disc snydrome, the Department of Defense policy overrode the literal application of Paragraph 8–22 of the Army Regulations.

■ Our conclusion is that at the time of Captain Patterson's entry on active duty there was no proof positive that his condition was anything other than a static impairment, and therefore we do not believe that the Army violated any regulations when they found him medically acceptable in accordance with the Department of Defense policy. Then too, we find that even with the condition of an intervertebral disc syndrome—namely, a herniated neculeus pulposus—Captain Patterson was still medically accepted with the physical profile of "3", as awarded to him by and testified to by Colonel Blount.

Questions have been raised concerning the language of Paragraph 9–3c(3) of AR 40–501, which states:

"A profile containing one or more numerical designation '3' signifies that the individual has medical condition(s) or physical defect(s) which requires certain restrictions in assignment within which he is physically capable of performing full military duty. Such individuals are not acceptable under procurement (entry) standards in time of peace, but may be acceptable in time of partial or total mobilization. They meet the retention standards, while in service, but should receive assignments commensurate with their functional capability."

■ It was argued by petitioner that awarding him a numerical designator 3 meant that he was not acceptable under procurement entry standards. This contention was answered by the Army physicians and Lt. Colonel Gill, who testified that "procurement (entry) standards" refers to the procurement medical fitness standard found in Chapter 2 of

AR 40–501. That chapter specifically excepts medical and dental registrants who are to be evaluated under Chapter 8 of AR 40–501 (See paragraph 2–2f, AR 40–501). Further evidence that this is the required interpretation of the words "procurement standards" is found in paragraph 9–7d(3) of AR 40–501, where such standards are characterized as "Chap. 2" standards. See also paragraph 54e(3), AR 40–3. Finally, it might be noted that Chapter 2 of the AR 40–501 bears the short title of "Procurement Medical Fitness Standards" in contrast with Chapter 8 which bears the short title of "Medical Specialists Medical Fitness Standards." As Colonel Blount, Lt. Col. Gill and Major Sullivan all indicated, it is not inconsistent with Army Regulations to order a physician to active duty with a physical profile designator of 3 since they are admitted under a completely different set of physical standards.

After entering on active and reporting to Fort Polk, Captain Patterson was referred by the military personnel section to the orthopedic service for verification of his profile. Major Eugene F. Gulish examined Captain Patterson and concluded that he was medically qualified for duty with permanent limitations (See Block 3, DA Form 3349, dated 5 June, 1970). Major Gulish determined that an L3 physical profile was appropriate in view of his findings of an old herniated neculeus pulposus (HNP) at the L5 level which existed prior to service (EPTS) and was not in line of duty (LOD No). Additionally, limitation of not crawling, stooping, running, jumping, prolonged standing or marching and no strenuous physical activity were made in Section C of DA Form 3349. The above findings and profile award were concurred in by two other military physicians, who with Major Gulish constituted a Medical Board. Major Dennis J. Sullivan, then Chief of the Department of Surgery and Orthopedic Service, and who testified in this hearing, approved the above findings and recommendations on 5 June 1970.

Captain Patterson testified that he was required to do certain prolonged standing and stooping in handling the duties to which he was assigned. He testified that he complained to his military superiors, but that no corrective action was taken in reassigning him. However, Captain Patterson's present immediate superior, Major Radi, testified that he was unaware of the limitations of Captain Patterson's duties until approximately one week prior to his testifying in Court but that he knew that Captain Patterson's duties required him to do certain bending or stooping and prolonged standing. He did testify that if it was determined that Captain Patterson's profile was being violated that he would see that corrective action be taken. We feel it is.

On August 30, at approximately 3:00 A.M., as stated in the medical report of Dr. Grundy Cooper, dated August 30, 1970, Dr. Cooper was called to the home of Captain Patterson, Carthage, Texas, a distance of 120 miles from Fort Polk, Louisiana. Dr. Cooper found petitioner lying prone on the floor and felt that he was in obvious pain. There is a fact question as to whether Captain Patterson's condition was aggravated as a result of his military duties or as a result of his extra-military activities. He normally traveled to Carthage, Texas, an average of twice a week, as his wife is residing there, that he is a pilot and has flown on two occasions since being stationed at Fort Polk. Irrespective of the cause for the aggravation of Captain Patterson's herniated neculeus pulposus, the aggravation occurred since his entry on active duty. As testified to by Colonel Blount different Army Regulations are applicable to determine whether a person on active duty should be released due to a present physical condition which makes them unfit for further duty. (See paragraph 42, AR 40–3).

In our judgment petitioner has not sustained the substantial burden of showing that the Secretary of the Army, through his designated representative, violated his legislative mandate by arbi-

trarily failing to follow its own procedures and rules. The record in the case does not warrant the conclusion that the personnel involved ignored relevant and competent evidence, that they unreasonably construed the significant body of medical documents before them or that in any other matter they failed to discharge their designated duties in inducting this gentleman into the Army. It is not the function of this Court to determine who is fit or unfit for military service. However, we are quick to add that the courts certainly do have the right to step in if a petitioner's rights under the applicable statutes, military procedures and regulations are violated in a manner which causes substantial prejudice to him. However, our basic conclusions in this case are that the Army has not violated its regulations if it accepts a man who has in intervertebral disc syndrome with objective symptoms.

We conclude as follows:

A. That physicians are evaluated in accordance with the provisions of Chapter 8, AR 40–501.

B. That paragraph 8–3 of AR 40–501 spells out the Department of Defense policy regarding the potential acceptability of physicians for military service.

C. That the Department of Defense is superior to the Department of the Army and any policy directives of the Department of Defense controls the implementing Army Regulations applicable thereto.

D. That paragraph 8–22(b) AR 40–501, as it refers to intervertebral disc syndrome when there are definite objective abnormal findings, must be interpreted together with the language of paragraph 8–3 AR 40–501.

E. That Captain Patterson could be granted a profile of 3 under Chapter 9 of AR 40–501 consistent with being medically qualified for entry on active duty,

since "procurement (entry) standards" as that language of paragraph 9–3c(3) AR 40–501, is inapplicable to those individuals procured in accordance with Chapter 8, AR 40–501.

F. That the decision of the United States Army, acting through its designated representative, Colonel Blount, finding Captain Patterson medically acceptable and qualified for military service was a discretionary one and based on substantial evidence then available to him in accordance with the applicable Army Regulations.

G. That the decision of the Secretary of the Army, acting through his designated representative, in denying petitioner's Request for Release from Military Service, was not arrived at arbitrarily or capriciously.

■ Accordingly, the petition for habeas corpus is denied. However, in the circumstances present here we do believe that we should treat the action as a mandamus proceeding, pursuant to the mandamus jurisdiction given by 28 U.S. C.A. § 1361 and direct the Army to see to it that Captain Patterson is not assigned to duties which contradict the profile given him. We are sympathetic with the apparent plight of petitioner. It must be recognized that we are ill-equipped to second guess the Army as to physical fitness for military duty, but in any event it is clear here that this gentleman has been and is being assigned duties which require constant stooping and prolonged standing, *and this is precisely what the Army has said he cannot do.* Accordingly, WE DIRECT THE ARMY to immediately assign Captain Patterson to duties within profile 3.

There is much evidence in this record that petitioner's condition has steadily deteriorated. He has been hospitalized at least twice within recent months. It may well be that he is eligible for separation from the service under other ap-

plicable regulations, and if such requests are made the Army authorities will, of course, give him new physical examinations and review their decisions in accordance with these regulations. With this understanding, and subject to the order herein entered, the motion to dismiss the complaint of habeas corpus is granted.